IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| In re: | § | Case No. 10-80278-H3-11 |
| | § | |
| GALVESTON BAY BIODIESEL, LP | § | Chapter 11 |
| | § | |
| Debtor | § | |

### DEBTOR'S EMERGENCY MOTION FOR INTERIM AND FINAL ORDERS AUTHORIZING POST-PETITION SECURED FINANCING PURSUANT TO 11 U.S.C. §§ 362 AND 364(C), AND REQUEST FOR FINAL HEARING

**This motion seeks an order that may adversely affect you. If you oppose the motion, you should immediately contact the moving party to resolve the dispute. If you and the moving party cannot agree, you must file a response and send a copy to the moving party. You must file and serve your response within 14 days of the date this was served on you. Your response must state why the motion should not be granted. If you do not file a timely response, the relief may be granted without further notice to you. If you oppose the motion and have not reached an agreement, you must attend the hearing. Unless the parties agree otherwise, the court may consider evidence at the hearing and may decide the motion at the hearing. Represented parties should act through their attorney.**

**The Debtor is seeking an emergency hearing on the interim request for relief prior to the fifteen day period.**

Galveston Bay Biodiesel, LP ("GBB"), debtor-in-possession ("Debtor"), files this Emergency Motion for Interim and Final Orders Authorizing Post-Petition Secured Financing Pursuant to 11 U.S.C. §§ 362 and 364(c), and Request for Final Hearing (the "Financing Motion"). In support of this Motion, the Debtor respectfully represents as follows:

### SUMMARY OF RELIEF REQUESTED

1.      The Debtor seeks interim and final orders, pursuant to sections 362 and 364(c) of the Bankruptcy Code authorizing the Debtor to obtain post-petition financing, scheduling a final hearing and granting related relief. In particular, the Debtor seeks authority to obtain post-

petition financing in the aggregate amount of up to $200,000 (the "Credit Facility"), subject to the terms and conditions of the Debtor-in-Possession Credit Agreement between the Debtor and 4828 PIB, LLC (the "DIP Credit Agreement") and collectively with all agreements, documents and instruments delivered or executed in connection therewith, the "Financing Documents").

2.      The Debtor and 4828 PIB have negotiated the terms of an LOI for the sale of all the assets of the Debtor pursuant section 363 and an auction to be approved by this Court. Concurrently, the Debtor intends to file a plan of liquidation pursuant to which the proceeds from the sale will be distributed.  The Debtor anticipates that this process will take approximately 60 days.  The Debtor requires the funds to be loaned under the DIP Credit Agreement in order to pay the ongoing expenses of the Debtor, the administrative claims of the estate, and the costs associated with the marketing and sale of its assets.

3.    The terms and conditions of the Credit Facility shall be embodied in a final order and the DIP Credit Agreement attached hereto as Exhibit "A."   In accordance with Bankruptcy Rule 4001, below is a summary of the terms of the proposed Credit Facility:

     a.      **Borrower:**  The Debtor, Galveston Bay Biodiesel, LP

     b.      **Lender:**  4828 PIB, LLC ("4828 PIB" or "Lender")

     c.      **Amount and Type of Facility:**  Up to $200,000, subject to certain limitations set forth in the DIP Credit Agreement

     d.      **Term:**  Unless otherwise extended in writing by the parties, the Credit Facility shall terminate on the earlier of: (a) the date of which is 60 days after the closing of the Credit Facility; (b) the date of indefeasible payment in full by the Debtor of the loans under the Credit Facility and the permanent resolution of all commitments to zero dollars ($0), including all interest, fees, and expenses as may be appropriate under law; (c) the date on which any Liens securing the obligations under this Agreement are set aside or avoided or the claims thereunder are disallowed in any manner, in each case, in whole or in part; (d) the date of consummation of the sale or disposition of all or substantially all of the assets of, or equity interests in, the Debtor's estate to any Person; (e)  the effective date of a plan of reorganization in this case; (f) the termination of the Credit Facility by either the Lender or the Debtor upon 10 days notice under Section 5.2

of the DIP Credit Agreement, or (g) the date, if ever, that is ten (10) days after the date on which the Court acting in the Borrower's Bankruptcy Case shall deny approval of the Letter of Intent by and between Borrower and Lender dated May 10, 2010, if such disapproval shall ever occur.

e.   **Non-Default Interest Rate and Payment Terms:**  Interest shall accrue, but not be paid until the expiration of the Term, as above, at a per annum rate equal to 16%.  All interest shall be computed on the basis of a 360-day year for the actual number of days elapsed.

f.   **Fees:**  Borrower shall pay $5,000 to Lender as a one time-fee for attorneys' fees, costs and expenses for establishing this Facility (the "Administrative Fee").

g.   **Payment:**  The outstanding balance of the Credit Facility shall be paid in full together with interest as authorized under the Credit Facility and the Financing Documents and as approved by the Bankruptcy Court, from the proceeds of a successful refinancing, sale or reorganization.

h.   **Collateral Security:**  In accordance with sections 364(c)(2) and (c)(3) of the Bankruptcy Code, all amounts owing by the estate under the Credit Facility will be secured by a perfected security interest in and lien of the highest available priority on all assets (tangible, intangible, real, personal, and mixed) of the Debtor, whether now owned or hereafter acquired, described by way of example and not limitation in Article 6 of DIP Credit Agreement.  The Collateral shall not include any causes of action under Chapter 5 of the Bankruptcy Code, except for causes of action under Section 549 of the Bankruptcy Code regarding unauthorized post-petition transfers of the property of the estate.

i.   **Binding Upon Debtor:**  All the terms and conditions of the Financing Documents and Final Order shall be binding upon the Debtor, and the rights of 4828 PIB, LLC under the Financing Documents shall survive any dismissal of the Debtor's bankruptcy case.

j.   **Use of Proceeds:**  Proceeds of the Credit Facility shall be used for one or more of the following purposes: (A) to pay post-petition expenses, including monthly payroll and taxes, and professional fees and expenses incurred in connection with the administration and preservation of the bankruptcy estate of the Debtor, (B) to pay post-petition rent to Sultex, Ltd., (C) to pay the interest fees and charges due hereunder, and (D) to pay such other expenses as may be approved by Lender from time to time in its sole discretion.

k.   **Borrowing Conditions:**   The DIP Credit Agreement provides usual and customary terms.

l.   **Events of Default:**  The DIP Credit Agreement provides usual and customary terms.

m.    **Indemnification:**   The DIP Credit Agreement does not provided for any indemnification of the parties.

n.    **Waiver of Applicability of Nonbankruptcy Law Relating to Perfection on Property of the Estate or on the Foreclosure or Other Enforcement of the Lien:** The DIP Credit Agreement provides usual and customary terms.

o.    **Relief From Automatic Stay:**   The Dip Credit Agreement provides does not require notice, hearing and order of the Court.

## JURISDICTION AND VENUE

4.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Consideration of this Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (D) and (O).  The statutory predicates for the relief sought herein are sections 362 and 364(c) of the Bankruptcy Code.  Venue is proper before this Court pursuant to 28 U.S.C. §§ 14008 and 1409.

## PRELIMINARY STATEMENT

5.     The Debtor seeks Court approval to obtain secured, post-petition financing on behalf of the Debtor to fund reasonable and necessary operating costs and expenses of the Estate incurred and to be incurred in order to administer the Debtor's estate and preserve the Debtor's value pending an acceptable reorganization, refinancing, or sale.  The secured, post-petition financing to be provided by 4828 PIB, LLC ("4828 PIB") is needed to satisfy the business and administrative expenses of this estate insofar as the Debtor does not generate any regular revenue or currently receive funds from other sources.

6.     The Debtor has negotiated the terms of a letter of intent with 4828 PIB for the sale of substantially all of its assets.  The offer is subject to better and higher offers to be solicited pursuant to an auction process.  However, the Debtor has limited ability to pay for the expenses of maintaining and marketing of Debtor's assets, as well as for the administration of this estate.  If the Debtor cannot secure funding to pay payroll taxes, salaries, and other estate expenses, then

it cannot reasonably market its assets for sale or consummate the proposed transaction with 4282 PIB.

7.      The Debtor has negotiated the terms of this consensual, debtor-in-possession, secured, post-petition loan with 4828 PIB, LLC at arm's-length to fund the administrative expenses of the Debtor's estate until closing of the sale.  The proposed post-petition financing will ensure that the Debtor has the funds necessary to pay to preserve the Debtor's assets, fund the expenses of this case and market its assets for sale and ultimate auction.

8.      The Debtor is not generating any significant or regular cash flow and does not have any assets of significant value.  Accordingly, the Debtor cannot obtain funds on an unsecured basis.

9.      Furthermore, Altira Group, LLC ("Altira") a pre-petition lender to the Debtor is not willing to provide the Debtor with post-petition financing.  The Debtor has not been sought to borrow the funds that are the subject of this Motion from sources other than Altira or 4828 PIB because the Debtor, in the exercise of its reasonable business judgment, is confident that in today's market, debtor-in-possession financing on the same or similar terms of this consensual, secured, post-petition financing, as further described below, would not be available from third party lenders.  Therefore, 4828 PIB is the best source, on the best terms, for such financing.

## BACKGROUND

**A.      Bankruptcy Events**

10.     On May 10, 2010 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Southern District of Texas (the "Court").

11.     The Debtor has continued in possession of its property and has continued to operate and manage its business as a debtor-in-possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request has been made for the appointment of a trustee or examiner, and no official committee has yet been established.

12.     GBB is a Texas limited partnership that was formed on December 9, 2005 to develop and operate biodiesel production facilities.  GCIP, LLC is the general partner, and 19 other individuals and entities have some limited partnership interest, including Standard Renewable Energy Group, LLC and Biodiesel 1, LLC, the only limited partners with more than a 7% partnership interest.

13.     The Debtor currently has 5 employees, but at its peak in 2008 it had over 30 employees.  The Debtor's plant is located at 4828 Old Port Road, Galveston, Texas 77554.  The Debtor leases the approximately seven (7) acres of land upon which the plant sits in Galveston from Sultex Ltd. ("Sultex").  The plant is located on the Galveston ship channel with ready access to ship, barge, rail and truck transportation.

14.     The plant began operation in August 2007.  From August 2007 until early summer 2008, significant modifications were made to the plant to increase its production capabilities.  At the point of the beginning of production in the second week of September 2008, Hurricane Ike washed through Galveston causing about $23.4 million in damages to the plant and business interruption claims.

15.     In the summer of 2009, GBB attempted to restart the facility but numerous problems related to the hurricane and the delay caused by it severely limited the plant's capabilities.

16.     The Debtor's insurance companies, Liberty Mutual Insurance Company and Ace American Insurance Company, failed to pay outstanding claims for property damage and business interruption caused by Hurricane Ike.  As a result the Debtor has not been able to make necessary repairs to make the plant fully operational or to pay the numerous claims from vendors and suppliers incurred as result of the efforts to restore the plant after the hurricane.

17.     In addition to the disruption caused by Hurricane Ike, in 2009 the Federal Government failed to issue new mandates for the use of biodiesel as required by law, and failed to extend the tax credit to blenders for the blending of biodiesel.  This has severely impacted the entire biodiesel industry.

18.     The combined effect of the failure of the Debtor's insurance companies to honor its Hurricane Ike insurance claims and the industry impact caused by the lack of a biodiesel mandate have made it necessary for the Debtor to file this chapter 11 bankruptcy case.  The Debtor's decision to file was hastened by the receipt of a Notice of Termination and Demand for Possession (the "Termination Notice"), received on March 22, 2010 from Sultex, the Debtor's landlord.  The Termination Notice alleged payment and other defaults under the lease, and gave notice that the lease would terminate on April 7, 2010.  The Debtor subsequently negotiated several extensions of the termination date, the latest such extension being May 12, 2010.

**B.      The Debtor's Need for Immediate Post-Petition Financing**

19.     An immediate need exists for the Debtor to obtain funds necessary to preserve the Debtor's assets, fund the expenses of this case and market its assets for sale and ultimate auction.

20.     The Debtor believes, under the circumstances of this case, that it will be unable to obtain financing for the estate in the form of general unsecured credit allowable solely as an administrative expense under section 503(b)(1) of the Bankruptcy Code.  Similarly, the Debtor

believes it will be unable to obtain secured financing from third party lenders on terms comparable to that offered by 4828 PIB, LLC.

21.    After weeks of exploring post-petition financing options with Altira and 4828 PIB and after extensive negotiations with 4828 PIB, they have agreed to provide the Debtor with the Credit Facility, which will be effectuated through the DIP Agreement and various attendant Financing Documents.

22.    The Debtor's decision to obtain post-petition, secured financing and to execute the Financing Documents is a result of the exercise of its sound and reasonable business judgment. The proposed financing is necessary, essential, and appropriate to pay the administrative expenses of this estate in order to effectuate an auction and sale of the Debtor's assets for highest and best price.  Given the circumstances of this case, the terms of the proposed post-petition financing and related transactions are fair, reasonable, and adequate and the proposed financing is in the best interest of the Debtor's estate.  The terms and provisions of the Financing Documents were negotiated at arms' length and in good faith.  The Debtor advises that, under the circumstances of this case, no alternative financing is available on any other basis, and no better offers, commitments, or timely proposals have been communicated to the Debtor.  Accordingly, the Debtor seeks authority to obtain secured, post-petition credit.

### RELIEF REQUESTED

23.    By this Financing Motion, the Debtor seeks, among other things, Bankruptcy Court approval of the Credit Facility, as well as authority to execute all Financing Documents and grant security interests and liens attendant to the Credit Facility.  The Debtor requests that the Court enter a Final Order pursuant to sections 362 and 364(c) of the Bankruptcy Code authorizing the Debtor to obtain up to $200,000.00 of secured, post-petition financing from 4828

PIB pursuant to the DIP Credit Agreement and the other Financing Documents.  The requested relief is necessary for the Debtor to preserve the value of the bankruptcy estate for the benefit of credits.

**ARGUMENT AND AUTHORITIES**

**A.    Approval of the Credit Facility Under Bankruptcy Code § 364**

24.    Section 364 of the Bankruptcy Code allows a Debtor to: (a) obtain unsecured credit in the ordinary course of business, (b) obtain unsecured credit out of the ordinary course of business, and (c) obtain credit with specialized priority or with security.  If a debtor cannot obtain post-petition credit on an unsecured basis, a bankruptcy court may authorize the obtaining of credit or the incurring of debt, the repayment of which is secured by a lien on unencumbered property.  11 U.S.C. § 364(c).

25.    The statutory requirement for obtaining post-petition credit under section 364(c) of the Bankruptcy Code is a finding, made after notice and hearing, that the debtor is "unable to obtain unsecured credit allowable under § 503(b)(1) of the [Bankruptcy Code] as an administrative expense."  11 U.S.C. § 364(c).  In other words, such financing is appropriate when the debtor is unable to obtain unsecured credit allowable as an ordinary administrative claim. *See In re Crouse Group, Inc.,* 71 B.R. 544, 549, *modified on other grounds*, 75 B.R. 553 (Bankr. E.D. Pa. 1987) (stating that secured credit under section 364(c)(2) of the Bankruptcy Code is authorized, after notice and hearing, upon showing that unsecured credit cannot be obtained). Additionally, courts will generally accord deference to the necessity of the debtor obtaining post-petition financing to remain viable.  *See Bray v. Shenandoah Fed. Savs. & Loan Ass'n (In re Snowshoe Co.)*, 789 F.2d 1085, 1088 (4th Cir. 1986); *In re Ames Dep't Stores*, 115 B.R. 34, 40 (Bankr. S.D.N.Y. 1990).

26.     Given the facts of this case, the Debtor is unable to procure the credit required to fund the administration of this estate in the form of unsecured credit or unsecured credit with an administrative expense priority under section 503(b)(1) of the Bankruptcy Code on better terms than those offered by 4828 PIB.  The Debtor, therefore, has no choice but to seek credit on a secured basis in exchange for the granting of liens on the DIP Collateral.

27.     A Debtor seeking financing under section 364(c) of the Bankruptcy Code must make a reasonable effort to seek other sources of unsecured credit available but "is not required to seek credit from every possible source," and is granted considerable deference in acting in accordance with its business judgment.  *See Ames Dep't Stores*, 115 B.R. at 40; *In re Plabell Rubber Prods., Inc.*, 137 B.R. 897, 900 (Bankr. N.D. Ohio 1992).  The Debtor has no other financing source to fund the amounts needed to sustain the Debtor's reorganization effort during this chapter 11 case because the Debtor is operating at a negative cash flow and has no significant unencumbered assets.  Hence, only 4828 PIB, which as the proposed "stalking horse" has a significant, vested interest in this case, has agreed to provide the Debtor and this estate with sufficient credit to administer the Debtor.  No other lender would provide comparable unsecured financing on similar, let alone better, terms.

**B.     Application of the Business Judgment Standard**

28.     Having determined that post-petition financing was available only under § 364(c), the Debtor negotiated the Credit Facility at arms' length and in accordance with its sound business judgment.  In negotiating post-petition financing arrangements, courts permit debtors "to exercise their basic business judgment consistent with their fiduciary duties."  *Ames Dep't Stores*, 115 B.R. at 38 (citations omitted).  Courts will evaluate the facts and circumstances of a debtor's case, and will accord significant weight to the necessity for obtaining financing, so long

as it does not run afoul of the provisions of and policies underlying the Bankruptcy Code. *See,*
*e.g., Snowshoe*, 789 F.2d at 1088 (upholding post-petition financing necessary to sustain
seasonal business); *Ames Dep't Stores*, 115 B.R. at 40 ("[C]ases consistently reflect that the
court's discretion under § 364 is to be utilized on grounds that permit reasonable business
judgment to be exercised so long as the financing agreement does not contain terms that leverage
the bankruptcy process and powers or its purpose is not so much to benefit the estate as it is to
benefit a party-in-interest.").

29.    Courts generally will not override a debtor's prudent and responsible exercise of
its business judgment consistent with its fiduciary duties to the bankruptcy estate and its creditors
in negotiating an appropriate financing package. *See Ames Dep't Stores*, 115 B.R. at 38 (in
examining requests by a debtor for interim financing, courts apply the same business judgment
standard applicable to other business decisions); *In re Simasko Prod. Co.*, 47 B.R. 444, 449
(Bankr. D. Colo. 1985) (noting that business judgment should be left to the boardroom and not to
the bankruptcy courts); *In re Lifeguard Indus. Inc.*, 37 B.R. 3, 17 (Bankr. S.D. Ohio 1983)
(same).  "More exacting scrutiny will slow the administration of the debtor's estate and increase
its costs, interfere with the Bankruptcy Code's provision for private control of administration of
the estate, and threaten the court's ability to control a case impartially." *Richmond Leasing Co. v.*
*Capital Bank, N.A.*, 762 F.2d 1303, 1311 (5th Cir. 1985).

30.    Specifically, a bankruptcy court should defer to a debtor's business judgment
regarding the need for and the proposed use of funds, unless such decision is arbitrary and
capricious. *See In re Curlew Valley Assocs.*, 14B.R. 507, 513 n.11a (Bankr. D. Utah 1981).
Courts generally will not second-guess a trustee's business decisions when those decisions
involve "a business judgment made in good faith, upon a reasonable basis, and within the scope

of his authority under the Code." *Id.* At 513-14 (footnotes omitted).

31.     The Debtor has exercised sound business judgment and has satisfied the legal prerequisites to borrow under the terms and conditions of the Credit Facility.  The financing contemplated by the Credit Facility benefits this estate.  With the credit provided under the Credit Facility, the Debtor can preserve the value of its assets and market those assets for the highest and best offer.  Without the financing furnished by the Credit Facility, the Debtor will not be able to pay the costs of this case and may be forced to convert to chapter 7.  Accordingly, this Court should authorize the Debtor to obtain secured, post-petition financing consistent with the terms and provisions contained in the Credit Facility.

**C.     Good Faith**

32.     Bankruptcy Code § 364(e) was designed to "encourage the extension of credit to debtors" by allowing lenders to "rely on a bankruptcy court's authorization of the transaction." *See  In re EDC Holding Co.*, 676 F.2d 945, 947 (7th Cir. 1982) (the purpose of § 364(e) is "to overcome people's natural reluctance to deal with a bankruptcy firm whether as purchaser or lender by assuring them that so long as they are relying in good faith on a bankruptcy judge's approval of the transaction they need not worry about their priority merely because some creditor is objecting to the transaction and is trying to get the district court or the court of appeals to reverse the bankruptcy judge."). *See also In re N. Atl. Millwork Corp.*, 155 B.R. 271, 279 (Bankr. D. Mass. 1993) ("The purpose of § 364(e) is to allow good-faith lenders to rely upon conditions at the time they extend credit and to encourage lenders to lend to bankrupt entities.") (citations omitted).

33.     The terms and conditions of the Credit Facility are fair and reasonable and were negotiated by the parties in good faith and at arm's length, with all parties represented by counsel.

**D.     Request for Immediate Interim Relief**

34.     The Debtor requires interim and immediate use of the financing provided by the Credit Facility.  It is essential that the Debtor immediately pay salaries and other ordinary, post-petition operating expenses.  It is anticipated that the Estate will need, and the Debtor will seek authority to borrow on an interim basis, an initial draw or advance of $50,000.

35.     If interim relief is not obtained, the Debtor's assets will be immediately and irreparably jeopardized, to the detriment of the Debtor's estate, its creditors and other parties in interest.

36.     Accordingly, the Debtor requests that, pending the Final Hearing, the Court schedule the Interim Hearing as soon as practicable to consider the Debtor's request for Authorization to obtain interim credit in the amount of $50,000 under the DIP Facility, in accordance with and pursuant to the terms and conditions contained in the DIP Credit Agreement.

37.     Bankruptcy Rule 4001(c) permits a court to approve a request for financing during the 15-day period following the filing of a motion requesting authorization to obtain post-petition financing, "only to the extent necessary to avoid immediate and irreparable harm to the estate pending final hearing." FED. R. BANKR. P. 4001 (c)(2).  In examining requests for interim relief under this rule, courts apply the same business judgment standard applicable to other business decision.  *See, e.g., In re Ames Dep't Stores, Inc.*, 115 B.R. at 38.  After the 15-day period, the request for financing is not limited to those amounts necessary to prevent destruction

of the debtor's business.  A debtor is entitled to borrow those amounts that it believes prudent in the operation of its business.  *See, e.g., In re Simasko Prod. Co.*, 47 B.R. at 449; *In re Ames Dep't Stores, Inc.*, 115 B.R. at 36.

38.     Following such Interim Hearing, the Debtor would respectfully request that this court set a Final Hearing, subject to the Curt's calendar, for the next available setting after the expiration of the 15-day notice period required by the Bankruptcy Rules.

## PRAYER

WHEREFORE, based upon the foregoing, the Debtor respectfully requests that the Court set this matter for Interim Hearing, that upon such Interim Hearing the court enter the proposed form of Interim Order: (a) granting the Debtor the authority to enter into the Credit Facility and to execute the DIP Credit Agreement and all other Financing Documents attendant thereto; (b) granting perfected security interests in and liens of the highest available priority on the DIP Collateral, described by way of example and not limitation in Article 6 of the DIP Credit Agreement, in favor of 4828 PIB  pursuant to 11 U.S.C. §364(c)(2) and (c)(3); (c) approving all of the terms and conditions of the Credit Facility on an interim basis; (d) authorize the initial interim advance in the amount of $50,000; (e) setting this motion for Final Hearing at the Court's earliest convenience after the lapse of 15 days from the date of filing hereof; and (f) granting the Debtor such other legal and equitable relief to which it is entitled.

Respectfully submitted this 17th day of May, 2010.

SELMAN MUNSON & LERNER, P.C.

By: /s/ Christopher D. Johnson
      Christopher D. Johnson
      TBA No. 24012913
      James M. Schober
      TBA No. 24004907
      Two Memorial City Plaza
      820 Gessner, Suite 800
      Houston, Texas  77024
      Telephone:    (713) 827-1722
      Facsimile:    (713) 827-1438

PROPOSED ATTORNEYS FOR DEBTOR AND DEBTOR-IN-POSSESSION

## CERTIFICATE OF SERVICE

I hereby certify that on this 17th day of May, 2010, the Debtor caused to be served a true and correct copy of the foregoing Emergency Motion for An Order (I) Authorizing the Debtor to Enter into Debtor-In-Possession Financing Pursuant to 11 U.S.C. § 364(c), and (II) Request for Final Hearing to the parties below via ECF and to the parties on the attached service list via US mail and/or email.

/s/ Christopher D. Johnson
Christopher D. Johnson